## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION

DERRICK GRANTLEY,

     Plaintiff,

v.                             Case No. 5:22-cv-54-TKW-MJF

MELISSA D. ROLLINS,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate proceeding *pro se*, alleges that Defendant Melissa D. Rollins—a Florida Department of Corrections employee—violated the Eighth Amendment when she acted with deliberate indifference towards Plaintiff's mental health needs. Defendant moves to dismiss. Doc. 32. Plaintiff opposes the motion. Doc. 37. Because Plaintiff failed to exhaust his administrative remedies as required by the PLRA, the District Court should grant Defendant's motion to dismiss.[1]

---

[1] Because Plaintiff's failure to exhaust his administrative remedies warrants dismissal, the undersigned does not address additional arguments asserted by Defendant. *See* Doc. 32 at 1–2.

# I. BACKGROUND

Plaintiff alleges that on August 11, 2021, Defendant placed Plaintiff in confinement despite her knowledge that Plaintiff previously had harmed himself while in confinement. Plaintiff also asserts that Defendant failed to obtain mental health care for Plaintiff despite Plaintiff advising Defendant that he was going to cut himself. Subsequent to being placed in confinement, Plaintiff cut his wrists and swallowed a razor.

# II. STANDARD

## A. <u>The PLRA's Mandatory Exhaustion Requirement</u>

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a section 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015). Exhaustion of such remedies is a mandatory precondition to suit. *Ross v. Blake*, 578 U.S. 632, 638 (2016); *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Varner v. Shepard*, 11 F.4th 1252, 1258 (11th Cir. 2021).

Furthermore, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion 'means using all steps that the agency holds out, and doing so *properly* . . .." *Id.* (quoting *Woodford*, 548 U.S. at 90). The agency, not the PLRA, determines the proper method of exhaustion. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90.

**B.    The FDC's Grievance Procedure**

The Florida Department of Corrections' ("FDC") grievance procedure is a three-step process. To complete the process, an inmate must: (1) file an informal grievance with a designated prison staff member; (2) file a formal grievance at the institutional level with the warden's office; and (3) submit an appeal to the Office of the Secretary (through the Bureau of Policy Management and Inmate Appeals in the FDC's Central Office). Fla. Admin. Code r. 33-103.005 to -103.007; *see Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).

The FDC provides specific deadlines for completing each step of the grievance process. *See* Fla. Admin. Code r. 33-103.011. Informal

grievances must be received by the institution "within 20 days of when the incident or action being grieved occurred." *Id.* 33-103.011(1)(a). Within fifteen calendar days of receipt of the informal grievance, FDC staff must provide a written response to the informal grievance. *Id.* 33-103.011(3)(a).

If the informal grievance is denied, the institution must receive an inmate's formal grievance no later than fifteen days from the date of the response to the informal grievance. *Id.* 33-103.011(1)(b). FDC staff must provide a written response to the formal grievance within twenty calendar days of receipt of the formal grievance. *Id.* 33-103.011(3)(b).

Finally, an institution must receive an appeal from the denial of a formal grievance within fifteen days "from the date the response to the formal grievance is returned to the inmate." Fla. Admin. Code r. 33-103.011(1)(c). The Central Office must respond to a grievance appeal or direct grievance within thirty calendar days of receipt of the grievance. *Id.* 33-103.011(3)(c).

Notably, "unless the grievant has agreed in writing to an extension of a time" for FDC staff to respond at a particular step in the grievance

process, the "expiration of a time limit . . . shall entitle the complainant to proceed to the next step of the grievance process." *Id.* 33-103.011(4).

Furthermore, when FDC staff respond to a grievance or appeal, they may return the grievance or appeal for a number of reasons. *Id.* 33-103.014(1). When a grievance is returned without action, an inmate "may refile utilizing the proper procedure or correct the stated deficiency and refile" the grievance within the applicable timeframe or seek an extension and file within the applicable extended timeframe. *Id.* 33-103.014(2)(a)–(b); 33-103.011(2) (allowing for extension of time when an inmate demonstrates that "it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner.").

**C.**   ***Turner*'s Two-Step Adjudication Process**

Failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *See Jones*, 549 U.S. at 216; *Varner*, 11 F.4th at 1257. Exhaustion is analyzed in two steps at the motion-to-dismiss stage. First, a "district court must . . . determine whether the complaint should be dismissed for lack of exhaustion 'tak[ing] the plaintiff's version of the facts as true.'" *Varner*, 11 F.4th at 1258 (quoting *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008)). Second, if the complaint is not subject to dismissal at the first step, the court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (quoting *Turner*, 541 F.3d at 1082). The court then decides whether under those findings the plaintiff has exhausted his available administrative remedies. *Id.*

## III.   DISCUSSION

**A.**   **The Parties' Respective Arguments Regarding Exhaustion**

**1.**   ***Defendants' Arguments in Favor of Dismissal***

Defendant asserts that Plaintiff failed to exhaust his administrative remedies as to Plaintiff's Eighth-Amendment claim. Doc.

32 at 3. In support of her motion, Defendant cites the Central Office's grievance log, a direct appeal to the Central Office, and two responses from the Central Office to Plaintiff's direct grievances of reprisal.[2] Doc. 32-1; Doc. 32-2; Doc. 32-3. Specifically, on September 30, 2021, fifty days after the incident in question, Plaintiff filed two purported grievances with the Central Office. Doc. 32-1. In these grievances, Plaintiff asserted that "Ms. Henck" had thrown away his "informal grievances" regarding Defendant's conduct. Doc. 32-2 at 2; *see* Doc. 33-1 at 1.

The Central Office returned both grievances to Plaintiff. The Central Office noted that it would not accept the grievances and that Plaintiff had failed to establish a good basis for bypassing the institutional level of the grievance process. Doc. 32-2 at 1; Doc. 33-1 at 1; *see e.g.,* Fla. Admin. Code r. 33-103.007(3)(a)(2) ("The inmate must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and bypassing the informal and formal grievances

---

[2] The FDC defines a grievance of reprisal as "a grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure." Fla. Admin. Code r. 33-103.002(9).

steps of the institution or facility."). The Central Office responses advised Plaintiff that he could refile his grievances at the proper institutional level in accordance with FDC procedures. Doc. 32-2 at 1; Doc. 33-1 at 1. Based on these records, Defendant argues that Plaintiff failed to properly exhaust his administrative remedies insofar as his grievances were filed untimely; that he failed to comply with applicable procedural rules set forth in the Florida Administrative Code; and his claim that Ms. Henck was interfering with his ability to properly grieve was conclusory and unsupported. Doc. 32 at 5–7.

## 2. *Plaintiff's Response to Defendants' Motions to Dismiss*

In his response to Defendant's motion to dismiss, Plaintiff contends that he fully exhausted the grievance procedure because FDC employees—including Ms. Henck and Ms. Stofel—intentionally thwarted his ability to use the grievance procedure. Doc. 37 at 4 ¶ 36. In support, Plaintiff attached copies of his informal grievances and appeals.

On September 15, 2021, Plaintiff filed his first informal grievance, Log #230-2109-0166, regarding the August 11, 2021, incident. *Id.* at 1 ¶ 1, 15. On September 16, 2021, Ms. Henck returned the grievance

explaining that the grievance could not be reviewed and evaluated because Plaintiff did not clearly present the specific facts and circumstances related to his complaint. *Id.* at 2 ¶ 4, 15. Plaintiff argues that this response was false and done in order to "hinder plaintiff's efforts to exhaust his remedies." *Id.* at 2 ¶ 5.

Plaintiff, however, refiled his informal grievance, Log #230-2109-0317. *Id.* at 2 ¶ 6. A few days later,[3] Ms. Henck responded to this informal grievance but failed to include an extra copy of the grievance. Doc. 37 at 2 ¶¶ 7–8. On October 11, 2021, Plaintiff submitted to the Warden a formal grievance, Log #230-2109-0317, regarding the August 11 incident and included his only copy of the informal grievance. *Id.* at 2 ¶¶ 9–10. In addition to submitting the formal grievance, Plaintiff also requested that the grievance coordinator provide him a receipt for this formal grievance. *Id.* at 2 ¶ 11, 17.

---

[3] Plaintiff does not articulate the date he filed this informal grievance or the date Ms. Henck responded to it. In his grievances filed on September 30, 2021, however, Plaintiff indicated that "every time I file a grievance about it, Ms. Henck returns it for no reason or claims she didn't receive it." Doc. 32-2 at 2. Thus, presumably the grievance to which Plaintiff refers was filed sometime between September 16, 2022, and September 30, 2022.

On October 18, 2021, Ms. Stofel responded to Plaintiff's request for a receipt and indicated that the formal grievance was given Log #2110-230-030. *Id.* at 2 ¶ 15, 19.

On November 9, 2022, after nobody responded to Plaintiff's formal grievance, Plaintiff filed an appeal to the Central Office. *Id.* at 3 ¶ 17, 21. The Central Office returned Plaintiff's appeal and explained that Plaintiff's appeal did not comply with FDC's rules because the grievance log number provided by Plaintiff was incorrect. The Central Office advised Plaintiff that he had an additional fifteen days from December 8, 2021, to resubmit his grievance "in compliance with Chapter 33-103, Inmate Grievance Procedure." Doc. 37 at 3 ¶ 19, 28.

On January 25, 2022, Plaintiff received the Central Office's response. *Id.* at 3 ¶ 20. Instead of seeking an extension of time as permitted under the FDC's rules, Plaintiff filed numerous other grievances against Ms. Stofel because she "intentionally [gave] plaintiff the wrong grievance appeal log# to his appeal filed on 10-11-2021." *Id.* at 3 ¶ 21, 26–36. These grievances only tangentially referred to the August 11, 2021, incident. *See id.* at 26, 30. On March 3, 2022, the Central Office

issued its denial of Plaintiff's grievance appeal relating to Ms. Stofel's conduct. *Id.* at 33.

## B.  **Step One of the *Turner* Analysis**

At step one of *Turner,* a "district court must . . . determine whether the complaint should be dismissed for lack of exhaustion 'tak[ing] the plaintiff's version of the facts as true.'" *Varner*, 11 F.4th at 1258 (quoting *Turner*, 541 F.3d at 1082). "The court should dismiss if the facts as stated by the prisoner show a failure to exhaust." *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015).

Here, taking Plaintiff's version of the facts as true, Plaintiff properly filed an informal grievance, to which the FDC responded on the merits.[4] Plaintiff timely filed his formal grievance. After failing to receive a response to the formal grievance within the specified deadline, he

---

[4] Although Plaintiff's informal grievances were filed well outside the window allowed under the Florida Rules, a court cannot find "a lack of exhaustion by enforcing procedural bars that the prison declined to enforce." *Whatley*, 802 F.3d at 1214; *accord Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) ("Failure to comply with administrative deadlines dooms the claim except where the institution treats the filing as timely and resolves it on the merits").

proceeded to the final step of the grievance procedure. Fla. Admin. Code r. 33-103.011(4) ("[E]xpiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process.").

Plaintiff asserts that his appeal was returned because Ms. Stofel interfered with the grievance procedure and gave him the wrong formal grievance log number. Further, he alleges that he was unable to resubmit an appeal using the correct formal grievance log number because he received the response on January 25, 2022, which was well after the December 23, 2021, deadline to resubmit. Assuming that Plaintiff was unable to refile his appeal, Defendant is not entitled to dismissal at Step One of *Turner*.

## C.   **Step Two of the *Turner* Analysis**

At *Turner's* second step, a court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Varner*, 11 F.4th at 1258 (quoting *Turner*, 541 F.3d at 1082). The district court then decides "whether under those findings the plaintiff has

exhausted his available administrative remedies." *Id.* (quoting *Turner*, 541 F.3d at 1082–83).

Plaintiff's argument is that the procedure was "unavailable" to him because he received the Central Office's response after the deadline to resubmit the appeal and because Ms. Henck and Ms. Stofel intentionally thwarted Plaintiff's attempts to use the grievance procedure.

"Baked into" the PLRA's exhaustion requirement is an exception: "[a]n inmate need exhaust only such administrative remedies as are available." *Varner*, 11 F.4th at 1258 (quoting *Ross*, 578 U.S. at 648). In other words, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (citing *Ross*, 578 U.S. at 642). Administrative remedies are "available" when they offer "the possibility of some relief for the action complained of." *Id.* (citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

There are "three circumstances in which an administrative remedy, although officially on the books is not capable of use to obtain relief." *Ross*, 578 U.S at 643. First, "when the procedure 'operates as a simple

dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.'" *Id.* Second, when the administrative remedies process is "so opaque it becomes, practically speaking, incapable of use." *Id.* And, finally, "when prison administrators thwart inmates from taking advantage of the grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. "While it is a basic premise that inmates cannot be held to the exhaustion requirements if the remedies for grievances are not 'available,' such as when prison officials prevent them from exhausting, the plaintiff must have some supporting proof of his assertions." *Kingcade v. Parker*, 949 F. Supp. 2d 1232, 1239 (S.D. Fla. 2013) (citing *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002)).

### 1. *Plaintiff Failed to Seek an Extension*

First, Plaintiff's argument that he could not have completed the grievance procedure because he did not receive the Central Office's response until January 25, 2022, is unavailing. Temporary obstacles that prevent the submission of a timely grievance "do not make administrative remedies unavailable where prisoners 'may request

consideration of untimely grievances for good cause.'" *Abram v. Leu*, 848 F. App'x 868, 871 (11th Cir. 2021) (quoting *Bryant v. Rich*, 530 F.3d 1368, 1373 (11th Cir. 2008)).

As relevant here, the FDC regulations provide that an inmate may seek an extension of time for refiling his grievance when he clearly demonstrates "that it was not feasible to file the grievance within the relevant time periods and the inmate made a good faith effort to file in a timely manner." Fla. Admin. Code r. 33-103.011(2); *see generally Dimanche*, 783 F.3d at 1213 n.2. Plaintiff concedes that he did not attempt to seek an extension of time when he received the Central Office's response. Doc. 37 at 3 ¶ 20.

Furthermore, Plaintiff certainly was aware that he could request to file an out of time grievance because he requested permission to file his informal grievance out of time. Specifically, Plaintiff's informal grievance was due on or before August 31, 2021. *See* Fla. Admin Code r. 33-103.011(1)(a). Plaintiff filed his informal grievance on September 15, 2021, nearly two weeks out of time. In that informal grievance, he explained: "I was unable to file this grievance at ACI due to me being on

self-harm status from 8-14-21 to 9-15-201. I am now filing this grievance." Doc. 37 at 15. The FDC never denied his grievance as untimely.

Given that the FDC previously accepted untimely grievances filed by Plaintiff, it is possible that FDC officials would have entertained Plaintiff's request to refile his out-of-time grievance. Thus, Plaintiff's failure to request an extension of time precludes a finding that Plaintiff exhausted his administrative remedies. *See Bryant*, 530 F.3d at 1373, 1378–79 (concluding that the plaintiff did not exhaust his administrative remedies when he could have shown good cause for its tardiness); *Harper v. Jenkin*, 179 F.3d 1311, 1212 (11th Cir. 1999) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies").

### 2.   *Ms. Henck and Ms. Stofel Did Not Prevent Plaintiff from Seeking an Extension*

Plaintiff claims that Ms. Henck and Ms. Stofel interfered with his ability to take advantage of the grievance process by failing to respond and by providing Plaintiff the wrong grievance log number. Doc. 37 at 4. Plaintiff, however, alleges that Ms. Henck's and Ms. Stofel's conduct

occurred *before December 8, 2021*, when the Central Office responded to Plaintiff's grievance appeal and provided him an opportunity to correct the deficiencies with his grievance appeal. Plaintiff does not allege that Ms. Stofel or Ms. Henck prevented him from re-filing his grievance after the Central Office returned the grievance on December 8, 2021. Indeed, there is no evidence that Ms. Hench and Ms. Stofel prevented him from correcting the defects in his grievance. *See Gipson v. Renninger*, 750 F. App'x 948, 953 (11th Cir. 2018). Thus, it is clear that the FDC grievance process—namely, filing a request to re-file his grievance out of time—was still available to Plaintiff. Plaintiff, therefore, has not shown that the grievance procedure was unavailable to him when he was required to resubmit his grievance.

### 3.   *Plaintiff's Grievances Against Ms. Stofel*

Plaintiff also appears to argue that his grievances against Ms. Stofel were sufficient to grieve his complaint against Defendant. Doc. 37 at 4 ¶ 38. Notably, Plaintiff's grievances regarding Ms. Stofel only tangentially mentioned the incident of August 11, 2021. Doc. 37 at 26, 30. Further, FDC officials treated these grievances as relating to Ms. Stofel's

purported failure to follow the grievance procedure. Thus, Plaintiff's grievances against Ms. Stofel, standing alone, do not support the conclusion that Plaintiff exhausted his administrative remedies. *See Simpson v. Holder*, 200 F. App'x 836, 840 (11th Cir. 2006) (noting that plaintiff did not exhaust his administrative remedies when his grievances "tangentially referred to his other claims" but did not request a remedy and the prison official's response did not respond to the other claims).

Furthermore, even if Plaintiff's grievances against Ms. Stofel did sufficiently alert prison officials to Defendant's failure to provide Plaintiff adequate mental health care, Plaintiff concedes that he received the Central Office's response to his appeal—the third and final step of the grievance procedure—on March 3, 2023. Doc. 37 at 4. Plaintiff filed his civil action on March 2, 2023. Doc. 1 at 1. Proper exhaustion must occur *before* a plaintiff initiates a lawsuit, not after he initiates a civil action. *Booth*, 532 U.S. at 738. "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint," not those that occurred

one day later. *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012).

Therefore, Plaintiff's grievances and appeal regarding Ms. Stofel are insufficient to establish that Plaintiff fully exhausted his administrative remedies.

### 4.    *Plaintiff's Grievances of Reprisal*

As noted above, Plaintiff also attempted to exhaust the grievance process on September 30, 2021, by filing two direct grievances of reprisal. In these grievances of reprisal, Plaintiff stated that he was submitting a grievance of reprisal because Ms. Henck had thrown away his informal grievances. The Central Office properly returned these grievances to Plaintiff as Plaintiff failed to clearly identify why he bypassed the formal level. *See* Doc. 32-2 at 1; Doc. 32-3 at 1. Thus, these grievances were clearly insufficient to exhaust his administrative remedies. *See Jones*, 549 U.S. at 218 (noting that inmates must comply with "applicable procedural rules" that are defined "by the prison grievance process itself."); *Woodford*, 548 U.S. at 90 (noting that proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules.").

\* \* \*

Based on the record, the grievance procedure was available to Plaintiff insofar as Plaintiff could have sought an extension of time to refile his grievance after he received the Central Office's response. Plaintiff's efforts to utilize the available administrative remedies were incomplete and non-exhaustive. The District Court, therefore, should dismiss this civil action for Plaintiff's failure to exhaust his remedies.

**D.    Dismissal With Prejudice Is Appropriate**

Ordinarily, a dismissal for failure to exhaust administrative remedies is a dismissal without prejudice, but "when exhaustion is no longer possible, dismissal may be with prejudice." *Dawson Farms, LLC v. Farm Servs. Agency*, 504 F.3d 592, 607 (5th Cir. 2007) (citing *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002)); *Berry v. Kerik*, 366 F.3d 85, 87–88 (2d Cir. 2004) (indicating that dismissal with prejudice may be appropriate when "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust."). In this case, Plaintiff can no longer timely exhaust his administrative remedies insofar as he

is well beyond the deadline forth by the FDC regulations. *See* Fla. Admin. Code r. 33-103.011. Accordingly, because it is now impossible for Plaintiff to exhaust his administrative remedies, the District Court should dismiss this action with prejudice.

## IV. Conclusion

Because Plaintiff failed to exhaust his administrative remedies prior to initiating this civil action, and because it is now impossible for Plaintiff to exhaust his administrative remedies, the undersigned respectfully **RECOMMENDS** that the District Court:

1.  **GRANT** Defendant's motion to dismiss, Doc. 32;

2.  **DISMISS** this action with prejudice; and

3.  **DIRECT** the clerk of the court to close the case file.

At Pensacola, Florida, this <u>16th</u> day of August, 2023.

/s/ *Michael J. Frank*

**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation.** <u>**Any different deadline that may appear on the**</u>

**<u>electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636. The parties also are advised that if they dispute the accuracy of any facts taken from judicially-noticed documents, or if they otherwise wish to be heard on the propriety of the court taking judicial notice of those facts, they must raise this issue in an objection to this report and recommendation.**